Eanney, J.
Did the court of common pleas err in refusing to order the execution in this case to be set aside, and satisfaction to be entered on the judgment ? It can not be denied that'the plaintiff’s attorneys did agree to receive in full satisfaction of the judgments the sum of ¡1656.50 ; that it was paid in specie, in pursuance of the agreement, they giving a receipt specifying that it was in full payment and discharge of said judgment then remaining of record in Butler county. These acts of the attorneys were fully ratified and confirmed by the principal, the plaintiff in the judgment, and are-just as effectual as though done by him. This was done, it is true, with the mental reservation on the part of both client and attorneys, that it would not effectually bar a recovery for the balance of the judgment: first, because the release was not under seal; and, second, because the payment was not as large as the amount of the judgment. B.ut it is not pretended that any such intimation was given to Harper. On the contrary, it is not denied that he raised the money and paid it with the full confidence that it relieved him entirely from the judgment, and that the transaction was really what it seemed. Harper was at the time residing in the State of Arkansas, and was entirely insolvent. The question now presented is, whether the plaintiff can, by means of this sub *98 terfuge, obtain tbe payment of a part of his debt, and for the technical reasons above stated, in the face of his positive agreement, refuse to enter satisfaction upon his judgment.
It was very early settled as a rule of the common law, that the payment of less than the sum due upon a liquidated demand, although agreed to be received in full satisfaction, could not be insisted upon as such, because there was no valuable consideration to uphold the agreement to relinquish the balance. But if the party to whom the money was coming executed a release, under seal, for the same debt, he was ^effectually barred, although he should have received nothing upon it. The rule and the reason were purely technical, and often fostered bad faith. The history of judicial decisions upon the subject has shown a constant effort to escape from its absurdity and injustice. Hence, w.e find the Supreme Court of the State of New York, in the case of Kellogg v. Richards, 14 Wend. 116, holding the following language in respect to it:
“ The rule that the. payment of a less sum of money, though agreed to be received in full satisfaction of a debt exceeding that amount, shall not be so considered in contemplation of law, is technical, and not very well supported by reason. Courts, therefore, have departed from it on slight distinctions.”
The Supreme Court of Massachusetts; in the case of Brooks v. White, 2 Met. 285, speak of it in no less explicit terms. They say:
“ This rule which may obviously be urged in violation of good faith, is not to be extended beyond its precise import; and whenever the technical reason for its application does not exist, the rule itself is not to be applied. Hence judges have been disposed to take out of its application all those cases where there was any new consideration, or any collateral benefit received by the payee which might raise a technical legal consideration, although it was quite apparent that such consideration was far less than the amount of the sum due.”
A moment’s attention to the cases taken out of the rule, will show that there is nothing of principle left in the rule itself. One of the earliest cases is Reynolds v. Pinhowe, Cro. Eliz. 429, where, after judgment for £5, the plaintiff on receipt of £4, assumed to acknowledge satisfaction of the judgment before a given day; and this was held good upon the ground that it was a benefit to the plaintiff *99 to receive the money without suit or charge, and to prevent a writ of error, by which the defendant might have avoided the whole judgment. The authority of this case has been questioned, but 1 find it relied on in the very recent case of Sibner v. Tripp, 15 Mee. & *Welsb. 22, and conclude that it is regarded as good law in England now.
In Pinnell’s case, 5 Co. 117, it was held that the payment of a- less sum before the debt foil duo, would discharge it, and this reason is given : “ Peradventure parcel of the sum before the day it fell due, would be more beneficial to him than the whole at the day; and the value of the satisfaction is not material.” Another case tallen out, is thus alluded to in Co. Lit., 212, b : “If the obligor pay a lesser sum, either before the day, or at another place than is limited by the condition, and the obligee receiveth it, this is a good satisfaction.”
In Boyd v. Hitchcock, 20 Johns. 76, the debtor gave a note to the creditor for a less sum than was due, with security, and this was held a valid discharge, for the reason, as the court say, “here was a beneficial interest acquired, and a valuable consideration received by the plaintiffs, when they agreed to accept less than the whole demand.”
So in Kellogg v. Richards, before cited, it was held that the receipt of the note of a third person for less than the amount due, would be a good accord and satisfaction ; and the same thing was held in the case of Brooks v. White, before cited.
Again, it is well settled by a great number of authorities, that the receipt in satisfaction of any other article than money, will be effectual, no matter how small the value as compared to the debt. Blynn v. Chester, 5 Day, 360.
As stated by Alderson, B., in Sibner v. Tripp, 15 Mee. & Welsb. 37 : “ If you substitute for a sum of money a piece of paper, or a stick of sealing wax, it is different, and the bargain may be carried out in its full integrity. A man may give in satisfaction of a debt of £100, a horse of the value of five pounds, but not five pounds.” In this case it was held that the acceptance of the negotiable security of the debtor himself, by the creditor, was in law a satisfaction of a debt of greater amount. This decision was made as late as 1846, and the learned judge from whom I have quoted, ventures to intimate in respect to the whole subject, that “ the courts might very *well have held the contrary, and *100 have left the matter to the agreement of the parties.” We see, then, that the payment of a less sum than is duo, the day before a debt falls due, will discharge it—payment at another place than is stipulated will .do so — the delivery of a collateral article of any value will do so—the acceptance of the debtor’s note with security, the note of a third person, or even the negotiable note of the debtor himself, will do so ; and yet the payment of as much money in hand as is called for by such note, will have no such effect!—although it is demonstrable that the Utmost the creditor can get from such note can not exceed the amount that he gets in hand in the other case, without trouble, delay, or expense. It may seem to some persons, not having a great veneration for those institutions of antiquity, for which no reason can bo given, that a rule so effectually undermined, and having neither rhyme nor reason to support it, ought to be at once overruled and the whole matter placed upon the footing of reason and common sense. Especially, as the exigencies of modern commerce frequently compel the most deserving men, with the aid of friends, to compromise their debts for less than the amount due—an operation mutually beneficial to both debtor and creditor, as the creditor gets a part, where otherwise he would lose the whole, and the debtor is left free to commence again with tlie hope of better success. These considerations will necessarily arise whenever it becomes necessary to decide the general question. In this case we aspire to nothing higher than to follow in the footsteps of the sages of the law, and hold this one of the cases “taken out” of the rule. This money was payable at the clerk’s office in Butler county, or to the plaintiff, residing in the same county. It was paid in Arkansas-It is true it might be said that this was not so beneficial to the plaintiff, as though it had been paid to him in Butler county. This may be, but still it does not prevent it from being at a different place, which is all the rule seems to require. Again, Harper was bound to pay the judgment, but he was not bound to pay Graham’s lawyers. He did pay them $100 in *the settlement that was made, and this separately from the amount paid upon the judgment. Graham so treated it himself, for he indorsed only $550 upon the judgment, instead of $656.50, the amount actually paid by Harper. Harper thus discharged a debt due from Graham to his attorneys, and this was a “ collateral benefit received by Graham, which raises a technical legal consideration” for the promise *101 of Graham to discharge this judgment; although both sums paid fall far short of the amount of the judgment. But this circumstance, it is agreed in all the cases, is not at all material. I am aware that this is exceedingly technical and unsatisfactory reasoning, but its justification is found in the fact that the plaintiff seeks to escape from his solemn engagement, by which he has obtained money from the defendant by the aid of a technicality; to prevent the consummation of such a. fraud, he is met with technicalities nearly as absurd as that upon which he insists. The reason and common sense (and I trust I may soon say the law) of the whole matter is this: The plaintiff had a judgment against an insolvent man. He had a right to dispose of it to whom he pleased and for what he pleased, as well as he had any other article of property he owned. He did dispose of it to the defendant in the judgment, .and received his pay in full according to agreement. By this disposition, in the absence of fraud or unfairness, he ought in honor, justice, and law, to be bound, and we think under the circumstances of this case, in any view of it, either technical or substantial, he is bound.
It follows that the order of the court below is erroneous, and the same is reversed, and the cause remanded with instructions to enter satisfaction upon the judgment.